## GEORGE E. WILLIAMS *vs.* WILLIAM CHURCHILL.

Barnstable. March 11. — May 10, 1884. DEVENS & COLBURN, JJ., absent.

The cook of a steam tug, nineteen years old, who has lived on the seashore all his life, has been to sea three summers, and has been employed on the tug four months, the length of time which it took his predecessor to become familiar with the duties on board, cannot maintain an action against the owner of the tug, who was also its master, for personal injuries caused, in broad daylight, by his getting entangled in the loose end of a line which he was engaged in making fast to a cleat toward the bow of the boat, the bow line being more dangerous to handle than the stern line, because the strain upon it is greater, and it being usual to employ him at the stern, although a part of his duty was to work on deck generally; and the fact that the master urged him forward by saying, with an oath, " You won't get that rope fast," will not enhance the liability of the defendant.

HOLMES, J. This action is brought by the cook of a steam tug against the owner of the tug, who was also its master, to recover for personal injuries caused by the plaintiff's getting entangled in the loose end of a line which he was engaged in making fast to a cleat toward the bow of his vessel. The bow

line was said to be more dangerous than the stern line; but this only means that the strain upon it was likely to be greater, and, although it seems to have been more usual to employ the plaintiff at the stern, a part of his duty was to work on deck generally, and, upon the whole evidence, we think it clear that the master had a right to send him to the bow line, and that any dangers necessarily and universally incident to handling it were within the risks which the plaintiff assumed. It was broad daylight, and all the elements of the task and risk, including the tug's rate of speed, to which the plaintiff testified, were as visible to him as to any one.

It was urged that the plaintiff was under age and inexperienced, and that the behavior of the loose end of a taut rope was a hidden danger. But the plaintiff was over nineteen years old, had lived on the seashore all his life, had been to sea three summers, and had been on this boat four months, the time which it took his brother to become familiar with the duties on board and to get promoted. Taking these facts, in connection with the nature of the employment which he had accepted, the master had a right to assume that the plaintiff knew how to handle a line, and to order him to do so without special warning or instruction.

This is not like *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294. There the plaintiff was wholly new to the business, and there was evidence that there was a tendency in a warped board to spring back while being sawed, which was not obvious; and also that there was a natural tendency in inexperienced persons to put the hand behind the saw in such a way that, if the board sprang, it would throw the hand upon the saw, — which was what the plaintiff did. In the present case, one witness says that there is a natural tendency to put the foot on the end of the rope, which would be dangerous; but there is no evidence that the plaintiff did so, and he must be taken to have known the danger.

It was suggested that the master should have handled the tug by stopping or backing it so as to relieve the plaintiff from his embarrassment; but, assuming what he had a right to assume, there was no embarrassment until the plaintiff's foot was caught, and then it was too late. The harm was done in an

instant, and it does not appear that the master knew it until it was over.

It was most pressed that the master confused and drove the plaintiff forward into the danger by saying, with an oath, "You won't get that rope fast," just as the rope began to render, that is, to slip on the cleat by jerks because of the strain upon it. But these words carried no specific or wrong direction as to the manner in which the plaintiff should act. They did not forbid his letting the rope go to get more slack, if that was proper. And we cannot think that a jury would be warranted in finding that an oath addressed to a sailor who knew what to do was sufficient to shift the responsibility for a misstep.

*Verdict for the defendant to stand.*

*H. W. Chaplin*, for the plaintiff.

*C. T. Russell & W. E. Russell*, for the defendant.