# CHARLESTON.

## Hoffman v. Dickinson.

Submitted January 23, 1888.—Decided February 28, 1888.

1. MISNOMER—PLEA IN ABATEMENT—COMMON-LAW PLEADING.

Under section 14 of chapter 125 of the Code, no plea in abatement for a misnomer is allowed in any action; but the declaration and summons may, on motion of either party, on an affidavit of the right name be amended by inserting the same therein. (p. 145.)

2. DECLARATION—DAMAGES—SEVERAL COUNTS—COMMON-LAW PLEADING.

Where there are several counts in a declaration, and no damages named in any but the last count, the declaration is sufficient, as the damages claimed at the end of the declaration applies to each of the counts. (p. 145.)

3. NEGLIGENCE—MASTER AND SERVANT—COMMON-LAW PLEADING.

A declaration by a servant against his master for an injury which properly charges the master with negligence, although it does not allege knowledge in the master of the defect in the machinery which caused the injury, or that he ought to have known of such defect, and does not allege ignorance of such defect in the plaintiff, is sufficient. (p. 146.)

4. NEGLIGENCE—MASTER AND SERVANT—ASSUMPTION OF RISK.

When a servant enters into the employment of a master, he assumes all the ordinary risk incident to his employment, whether the employment is dangerous or otherwise. (p. 152.)

5. NEGLIGENCE—MASTER AND SERVANT—DEGREE OF CARE.

The master must provide for the safety of his servant, as far as can reasonably be expected under the circumstances; but he is not obliged to take more care of his servant than he would be expected, as a prudent man, to take of himself. (p. 152.)

6. NEGLIGENCE—MASTER AND SERVANT.

If a servant wilfully encounters dangers which are known to him, or are notorious, the master is not responsible for any injury occasioned thereby. (p. 152.)

7. NEGLIGENCE—MASTER AND SERVANT.

The measure of care which a master must take to avoid responsibility is that which a person of ordinary prudence and caution would use if his own interests were to be affected, and the whole risk his own. (p. 152.)

8. NEGLIGENCE—MASTER AND SERVANT.

Negligence and ordinary care are correlative terms. What constitutes ordinary care depends upon the circumstances of each particular case. It is such care as a person of ordinary prudence would under the circumstances exercise. (p. 152.)

9. NEGLIGENCE—MASTER AND SERVANT—DEFECTIVE APPLIANCES—PROMISE TO REMEDY.

If the master has been guilty of negligence in failing to procure suitable appliances, or machinery, for carrying on his business, and injury results therefrom to his servant, he must respond in damages, unless the servant, well knowing the default in this respect, enters upon the employment, or continues therein after such knowledge. In such case he assumes the increased risk, and can not hold the master responsible for the consequences. But if the servant knows the defect or danger, and has reasonable grounds to believe that the master has cured, or will immediately cure, the defect, he is not guilty of contributory negligence, by remaining in the service, and may recover for injury caused by such negligence of the master. (p. 152.)

10. NEGLIGENCE—MASTER AND SERVANT.

If a master, having knowledge of a danger of which the servant is ignorant, by his conduct, actions, or words, lulls the servant into a sense of security, in consequence of which he is injured, the master is answerable in damages. (p. 152.)

11. NEGLIGENCE—MASTER AND SERVANT—DEFECTIVE MACHINERY.

A servant can not recover for an injury suffered, in the course of his employment, from a defect in the machinery or appliances used by the master, unless the master knew, or ought to have known, of the defect, and the servant was ignorant of such defect, or had not equal means of knowledge. (p. 152.)

12. NEGLIGENCE—MASTER AND SERVANT.

The plaintiff and others while operating the defendant's machinery, being startled by an unusual sound, stopped work, observing which the defendant asked: "What is the matter?" and was answered, "The chain is going to break," upon which he assured

the men that there was no danger, and ordered them to " go ahead on the chain." Shortly after the chain broke, resulting in the fracture of the plaintiff's leg. HELD:

I. Under the circumstances the defendant should have examined the chain to see if there were any defects in it; and if, on an examination made with proper caution and care, he had found none, he would have been justified in ordering the men to go on with the work; and if after that the chain had broken, he would not have been liable in damages.

II. But as he did not make any examination, his responsibility depends upon what would have been the result of a subsequent examination. If that had shown, that defects existed, which the defendant ought to have known, and which by an examination conducted with proper caution and care he could have discovered, he is responsible; otherwise he is not responsible. Upon the question, whether the burden rests upon the plaintiff of proving, that such an examination would have disclosed such a defect, or upon the defendant, that it would not, the Court is equally divided. (pp. 154–156.)

*E. B. Knight* and *W. S. Laidley* for plaintiff in error.

*S. D. Littlepage* and *Kennedy & Littlepage* for defendant in error.

JOHNSON, PRESIDENT:

This is an action of trespass on the case, brought in September, 1886, in the Circuit Court of Kanawha county, by Callahill Hoffman against J. Q. Dickinson, to recover damages for the negligence of the said Dickinson in not having good and safe machinery and appliances for the work of putting together a salt-well frame, by which negligence the plaintiff was injured. The writ named the plaintiff as " Callahan " Hoffman, and in the declaration he is named as " Callahill " Hoffman. The defendant pleaded in abatement the variance between the writ and declaration, which plea was rejected, and the defendant excepted. He then demurred to the declaration, and each count thereof, which demurrer was overruled. He then pleaded not guilty, and the issue was tried by a jury, and verdict for $1,500.00 rendered for the plaintiff, which verdict the defendant moved to set aside, and for a new trial, which motion the court overruled, and entered judgment on the verdict. There are two bills of exceptions

in the record, one to the rejection of the plea, and the other, which certifies the evidence and facts, to the instructions given for the plaintiff, and the overruling the motion for a new trial. To the judgment the defendant obtained a writ of error with *supersedeas.*

The plea was properly rejected. Section 14 of chapter 125 of the Code of 1887 provides that " no plea in abatement for a misnomer shall be allowed in any action; but in a case wherein, but for this section, a misnomer would have been pleadable in abatement, the declaration and summons may, on the motion of either party, and on the affidavit of the right name, be amended by inserting the same therein."

It is also alleged as error that the court overruled the demurrer to the declaration—*first*, because the first count does not specify the amount of damages claimed; *second*, because the declaration fails to allege that the machinery alleged to have been weak, unsafe, and unsuitable, which was provided for the plaintiff's use by the defendant, was so defective that the defendant must have known it, or that he did know of the defect, or that his manager knew thereof; nor does it appear from any allegation of said declaration that the plaintiff did not have notice or knowledge of such defects;" that, " in actions by an employe for negligence causing injury from defective machinery, it is essential to allege knowledge thereof on the part of the master, and want of it on the part of the servant."

The first objection has been disposed of by this Court in *Postlewaite* v. *Wise*, 17 W. Va: 1, where it was decided that if a declaration contained several counts, and no damages are claimed at the end of each count, but the entire declaration concludes, " In all to the damage of the plaintiffs $500.00, and therefore they sue," this claim of damages must be regarded as on account of the wrongs named in each several count, and therefore a verdict and judgment may on such a declaration be rendered for damages. On this point, Green, J., for the Court, said, (page 24 :) " Again, it is claimed that it was error to render any judgment for damages, as none were named in the first and second counts, on which alone the plaintiffs did or could recover. The damages claimed at the end of the declaration applied to each of the counts. It

is both unusual and unnecessary to insert the claim for damages at the end of each count.    Damages for all the causes of action in the several counts may be claimed at the end of the declaration." It is true, Judge Green further says: "That this was intended to be done, and was done in this case, appears from the force of the declaration;" but because the words were used in that declaration, " in all to the damages," etc., does not change the general principle, that it is sufficient to claim the damages at the end of the declaration, or, as done in the declaration here, " to the damages of the plaintiff $10,000.00, and therefore he brings suit."

As to the second objection, the question is just as well settled in this State.    In *Snyder* v. *Railway Co.*, 11 W. Va. 14, it was held that it was not necessary for the plaintiffs to aver in the declaration that they were not guilty of negligence which contributed to the burning of their property; or, in other words, that they were not guilty of contributory negligence; that contributory negligence is a defence, upon which, in a proper case, the defendant may rely.

In *Sheff* v. *Huntington*, 16 W. Va. 307, it was held that the burden of proving contributory negligence is on the defendant, and the authorities for and against the proposition are there collected.    Pages 315, 316.

The declaration in the case of *Berns* v. *Coal Co.*, 27 W. Va. 285, did not allege knowledge on the part of the defendant, and ignorance on the part of the plaintiff, as to the unfitness of the appliances, and the improper ventilation of the mine; and the court held that a declaration by a servant against his master for injuries caused by the explosion of firedamp in a coal-mine need not with particularity state the acts of omission or commission which constituted the negligence of the master.    If it is specific enough to inform the master of what he is called upon to answer, so that he will not be surprised at the trial, it is sufficient.

In *Knaresborough* v. *Mining Co.*, 3 Sawy. 446, it was alleged in the declaration that the defendant provided the platform negligently, without any averment, either that the plaintiff was ignorant of the defect, or that it was known to the defendant; and the court held that it was sufficient, and that knowledge on the part of the plaintiff was a circum-

stance to convict him of concurring negligence, and proof of
it should come from the defendant; and that knowledge on
the part of the defendant is an ingredient of negligence, and
may be proved under the general allegation of negligence.
To the same effect are *Cummings* v. *Collins*, 61 Mo. 520;
*Railroad Co.* v. *Swett*, 45 Ill. 197. The negligence of the de-
fendant is clearly set out in the declaration, although it is
not alleged that the plaintiff was ignorant of the defect in
the chain which broke and caused the injury, nor that the
defendant had knowledge of such defect. The declaration
is sufficient.

The evidence in this cause is in substance as follows, as ap-
pears by the second bill of exception : The defendant, Dick-
inson, was the owner of a salt-furnace. On the 7th day of
May, 1886, the defendant was engaged in erecting a well-
frame at one of the salt-wells, and the plaintiff, Floyd Bur-
gess, William Taylor, Robert Hanner, and John Kains, un-
der the direction of David Thurman, were in the employ of
said defendant working on said well-frame. That the frame
was under the river-bank, and that the day they were so en-
gaged was a rainy day, and the river was rising rapidly, and
that it was desired to have the well-frame fastened together
before the river became too high to work at it, and to pre-
vent it being carried away by the water ; that Frank Wil-
liams was the boss carpenter, and had made the said well-
frame, and was superintending the work of putting it to-
gether; that David Thurman was the manager of the furnace,
and had taken the men employed at the furnace, and was di-
recting them in the work of erecting said well-frame; that
Hanner had left before the accident; that, at the time of the
injury, the men were engaged in drawing the timbers to-
gether, and forcing the tenons into the mortices, when a pin
would be driven in, thus fastening the frame together; that
the tenons were wet and swollen, and required some force
to close them up. For this purpose a ratchet was used, which
was fastened to the opposite sides of the frame by chains;
and, by working the ratchet, the parts of the frame were
drawn together. That at the time of the accident, the plain-
tiff, Burgess, and Taylor were standing near together. The
plaintiff had hold of the ratchet. They were standing from

seven to nine feet from the ground; some on the girders of the frame, and the plaintiff on a piece of railroad timber lying across from girder to girder. Raines was also standing on a girder, near the others; and his duty was to drive the pins in the holes when the tenons were drawn sufficiently close. Williams and Thurman were on the ground watching the operations, and giving directions. That, at a certain time, Thurman gave the order to stop the ratchet just before the chain broke, a short time; and that the order to stop the ratchet was because the tenon was close up in the frame. Thurman said, when the order to stop the ratchet was given, it was stopped; that he could not recollect how long it was stopped before the chain broke, but not very long. Raines said he was driving the pin when the chain broke; that the chain on the end of the ratchet broke, and the end held up by this chain dropped, and was held suspended by the other chain; that the breaking of the chain caused the plaintiff to lose his balance, and he fell to the ground, lighting on his feet; and, when he did so, he broke his leg between his knee and ankle, nearer the ankle; that Thurman went to him, found his leg was broken, and called to his men to come and carry him up the hill to his boarding-house; that the men, Raines, Taylor, and Burgess, jumped down from the same level on the girder, where the plaintiff stood, to the ground, near the plaintiff, and carried him to his room. That plaintiff proved by his own testimony, and that of Floyd Burgess, that when they were working the ratchet just before the accident, the chain sprung, and made some noise, and the plaintiff asked, " What's the matter with the chain ? " and that Burgess looked, and said there was nothing the matter; and that the plaintiff worked the ratchet again, and the chain made a noise again, and then they stopped the ratchet, and the defendant, Dickinson, who was standing in the engine-house near the top of the bank, called out, "What's the matter down there ?" Taylor said, "The chain is going to break;" and then Dickinson said: "Go ahead on that chain. Them fools are afraid of that chain. Tell them to go ahead." And the plaintiff gave the ratchet another turn, and it broke the chain, and knocked him off the timber he was standing on, against a post, and he fell down to the ground; and that a

sharp rock stood up about eight inches, and his leg went between the post and rock, and broke his leg. That the ratchet and chains were the property of the defendant. That the chain which was broken was a log chain ; the other was a shorter linked chain, and a size larger. That the timber on which the plaintiff stood was four by six inches, and some said nine by ten inches. That Dickinson was in the engine-house looking on. The engine-house was from twenty-five to forty feet from where the men were working when the chain broke. The frame was about nine or ten feet square, and the timber twelve inches by twelve inches. That, when they were carrying plaintiff to his boarding-house, defendant told plaintiff to keep quiet ; that he would see him out of this. That, at the time of the trial, plaintiff was still disabled, and could only travel on crutches, and that it had been about eleven months since he was injured. That he had no means of support, and worked by day's work. That he got one dollar per day, and boarded himself, while working for defendant. It was proved there was very little difference in the size of the chains ; that the chain had never before been used with a ratchet, so far as the witnesses knew ; that the said ratchet was a very severe and powerful instrument ; that Burgess had before detailed the particulars of the accident, and had not mentioned Dickinson's interference ; said himself he did not tell all the facts ; that he was talking to try to keep out. There was conflict of testimony as to Dickinson telling them to "go ahead on the chain ;" the most of the other witnesses saying they did not hear it, or had forgotten it. As to this, the defendant said : "He was there only to see that the men had everything necessary ; that he could not detail his words during the day ; that he did not think it reasonable that he would tell the men to go on, when the bosses had given directions to stop, and that he had no recollection of saying anything of the kind as stated by the plaintiff and Burgess ; that the chains were the same used about the furnace, and were considered good ; and, for the purpose for which they had been used before, they had to be good, and that he knew of no defect in them ; that he assisted plaintiff, after the injury, to get to his boarding-house, and employed a man to assist him for

about a month, until he was taken to his father's house; that he paid his wages to him, his expenses for his nurse, and his physician's bill. It was proved by defendant that Frank Williams, the carpenter, was competent and skillful, and that Thurman was a competent and good manager; that the tools employed by them were good, and that none of them knew of any defect in the chain. I have not given all the evidence, but all I consider material to state. The court certified that the evidence in the bill was all the evidence of either party.

The plaintiff asked five instructions, which were objected to, but the court overruled the objections, and gave the instructions, and the defendant excepted. They are as follows:

"(1.) The jury are instructed that if they believe from all the evidence and circumstances that the defendant, Dickinson, knew, or by the exercise of due care and caution would have known, that the said chain was not of sufficient strength to bear the pressure necessary to be brought upon it in performing the work required to be done by the plaintiff, and, further, that the same was not sufficient, then the defendant was guilty of negligence, and liable to the plaintiff in damages, not exceeding the sum laid in the declaration, unless they further believe from all the evidence and circumstances, to their satisfaction, that the plaintiff also knew, or by the exercise of due care and caution would have known, that the said chain was insufficient to bear the pressure necessary in the performance of the work aforesaid.

"(2.) The jury are instructed that if they believe from the evidence that the plaintiff was employed as an ordinary laborer, to assist in performing said work, and that the defendant in person directed and superintended the same, and that the defendant in person specifically directed the plaintiff to bring to bear said pressure upon said chain, and that the plaintiff did, in obedience to said directions, and honestly relying on said defendant's superior judgment in that behalf, bring to bear said pressure on said chain, whereby the same was broken, and the plaintiff injured, and that they further believe that the defendant did not use due care and caution in giving said instructions under the circumstances, then the defendant is liable

"(3.) The jury are instructed that if they believe from the evidence that the defendant, Dickinson, either heard said chain crack or give way immediately before the same broke apart, or was put upon such notice that something had gone wrong, or was about to go wrong, about said work, as would lead a prudent and cautious man to investigate whether danger was not imminent, and said defendant did not make such investigation, but on the contrary ordered the plaintiff to proceed with the work, assuring him that there was no danger, and that the plaintiff in obedience to said order, and relying upon such assurance, did proceed with said work, in the course of which said chain was broken, and injury received, then the defendant is liable in damages, in a sum not exceeding that laid in the declaration.

"(4.) The jury are instructed that if they believe from the evidence that the said defendant was present in person giving directions, and superintending said work, and the said injury to said plaintiff resulted from carrying out the direct orders and directions of the defendant to bring to bear said pressure on said chain, and that said chain was not sufficient for said work, and that the defendant did not act as a prudent man in giving said order, under the circumstances the defendant is liable.

"(5.) The jury are instructed that if they believe from the evidence that the said plaintiff was employed as an ordinary laborer, and they further believe from all the evidence and circumstances that the said defendant, Dickinson, was present in person superintending said work, and that before the injury complained of he had brought to his knowledge such facts as would lead a prudent and cautious man to infer that there might be danger to the plaintiff, if continued at his post, and without investigating whether danger might not be imminent, ordered the plaintiff to proceed with said work, and that said plaintiff did proceed with said work, in obedience to said order, and in reliance upon the superior judgment of the defendant, and thereby received said injury, then the defendant is liable to the plaintiff in damages not exceeding the sum laid in the declaration."

Before proceeding to decide whether the foregoing instructions propound the law correctly, we will state the legal

principles applicable to this case. It is well settled that when a servant enters into the employment of a master, he assumes all the ordinary risks incident to his employment, whether the employment is dangerous or otherwise. The master must provide for the safety of his servant, as far as can reasonably be expected under the circumstances; but he is not obliged to take more care of his servant than he would be expected, as a prudent man, to take of himself. If a servant wilfully encounters dangers which are known to him, or are notorious, the master is not responsible for any injury occasioned thereby.

The measure of care which a master must take to avoid responsibility is that which a person of ordinary prudence and caution would use if his own interests were to be affected, and the whole risk were his own. Negligence and ordinary care are correlative terms. What constitutes ordinary care depends on the circumstances of each particular case. It is such care as a person of ordinary prudence would, under the circumstances, exercise.

If the master has been guilty of negligence in failing to procure suitable appliances or machinery for carrying on his business, and injury results therefrom to his servant, he must respond in damages, unless the servant, well knowing the default in this respect, enters upon the employment, or continues therein after such knowledge, in which case he assumes the increased risk, and can not hold the master responsible for the consequences; but if the servant knows the defect or danger, and has reasonable grounds to believe that the master has cured, or would immediately cure, the defect, he is not guilty of contributory negligence in the service, and may recover for injury caused by such negligence of the master. *Berns* v. *Coal Co.*, 27 W. Va. 285.

If the master, having knowledge of a danger of which the servant is ignorant, by his conduct, actions, or words, lulls the servant into a sense of security, in consequence of which he is injured, the master is answerable in damages. *Criswell* v. *Railway Co.*, 30 W. Va. 798. A servant can not recover for an injury suffered in the course of his employment, for a defect in the machinery or appliances used by the master, unless the master knew, or ought to have known, of the defect, and the

servant was ignorant of such defect, or had not equal means of knowledge. *Hayden* v. *Manufacturing Co.*, 29 Conn. 548; *Connolly* v. *Poillon*, 41 Barb. 366 ; *Byron* v. *Telegraph Co.*, 26 Barb. 39 ; *Ryan* v. *Fowler*, 24 N. Y. 410 ; *Malone* v. *Hathaway*, 64 N. Y. 5 ; *Walsh* v. *Valve Co.*, 110 Mass. 23 ; *Williams* v. *Churchill*, 137 Mass. 243 ; *Railroad Co.* v. *Conroy*, 61 Ill. 162 ; *Railroad Co.* v. *Shannon*, 43 Ill. 338; *Railroad Co.* v. *Troesch*, 68 Ill. 545 ; *Cummins* v. *Collins*, 61 Mo. 520 ; *Elliott* v. *Railroad Co.*, 67 Mo. 272; *Wonder* v. *Railroad Co.*, 32 Md. 411; *Perry* v. *Marsh*, 25 Ala. 659; *Cooper* v. *Railroad Co.*, 24 W. Va. 37.

In the case of *Williams* v. *Churchill*, *supra*, it was held that the cook of a steam-tug, who, at the time of the injury, was 19 years old, and who had lived on the sea-shore all his life, and who had been to sea three summers, and had been employed on the tug four months, the length of time which it took his predecessor to become familiar with the duties on board, could not maintain an action against the owner of the tug, who was also its master, for personal injuries caused, in broad daylight, by his getting entangled in the loose end of a line, which he was engaged in making fast to a cleat towards the bow of the boat; the bow line being more dangerous to handle than the stern line, because the strain upon it is greater, and it being usual to employ him at the stern, although a part of his duty was to work on deck generally. And the fact that the master urged him forward by saying with an oath, "You won't get that rope fast," will not enhance the liability of the defendant.

According to the rules we have announced above, and the evidence certified in this case, we have no hesitation in saying that there is no cause of action shown, unless it is in the fact, which must in this record, under well-established rules, be taken as true, that, after there had been some fear expressed that the chain would break, the defendant himself urged the laborers forward with the work by language well calculated to reassure the plaintiff,—language which indicates the defendant knew the chain was a good strong chain, and there was no danger.

The defendant, no doubt, if we may judge from his language, would not have hesitated at that moment to work

the ratchet himself. But still, if there were patent defects in the chain,—defects which he knew existed, or which by the use of ordinary care he could have discovered, and of which the plaintiff was ignorant, and did not have the same opportunity to discover as the defendant,—and in consequence of such defect the chain broke, whereby the plaintiff was injured, the defendant would be liable.

There is nothing in the argument of counsel for defendant in error that the proximate cause of the injury was the plaintiff jumping on a stone. Of course, being thrown down, he could not choose his place to alight, and there was no negligence in him in striking the stone. When the horses in a street railway ran off, through the negligence of the driver, and a passenger became frightened, and jumped from the car, and was killed, while all the other passengers remained in the car and were saved, this Court held that, under the circumstances, the passenger was not guilty of contributory negligence in jumping from the car. *Dimmey* v. *Railroad Co.*, 27 W. Va. 32. Here it certainly was the breaking of the chain that was the proximate cause of the injury; and, if the chain broke through the negligence of the defendant, he was liable.

The fact, that the defendant urged the men to "go ahead on the chain" does not make him responsible. His responsibility, under the circumstances, depends upon whether an investigation would have disclosed the fact that the chain was unsafe. When the noise was heard, and, in consequence thereof, the ratchet was stopped, and as a reason for stopping it the master was told, "The chain is going to break," this gave him notice that there was at least probable danger, and imposed upon him the duty of then and there examining, with proper care and caution, the chain, to see if there were defects therein which would probably cause it to break; and then if, upon such investigation, there had been found to be any apparent defects, he should not have urged the men forward, but, if, upon such examination, with proper care, he could discover no defects, then he would not have been liable if he had told the men to "go ahead on the chain," although it from some latent defect might have broken and caused the injury,

But he did not make an investigation. He was so well satisfied the clain was sound that he urged them forward with words that showed there was in his opinion no danger, and well calculated to lull the laborers into a sense of secu- rity. Now, his responsibility in this case depends upon whether that chain broke from causes that could have been discovered by a proper examination. If such defects could have been discovered by such examination, he is liable ; otherwise he is not. It would be illogical to hold him respon- sible if no reasonable care on his part could have discovered a defect in the chain, even by an examination just before it broke, merely because, without the examination, he told them to do the very thing he would have been justified in telling them to do if he had made the examination, and found no defect.

The burden was on the plaintiff to show that the injury occurred through the negligence of the defendant in having improper machinery and appliances, and that he knew, or ought to have known, of the defect therein. There is not one particle of evidence in the record to show the character of the defect in the chain. There must have been such de- fect, or it would not have broken ; but whether it was from an improper welding in a link, or a link partly cut, or chilled too much, or what was the defect, does not appear. To hold the defendant responsible it should be shown that, had an examination of the chain taken place when the ratchet was ordered to be stopped because of the noise, it would have appeared that the chain was defective, and it was dangerous to proceed with the work. With these principles settled, the second, third, fourth and fifth instructions are erroneous, because they all hold that the defendant was liable, whether he knew of the defect, if such patent defect existed, or might have known by the use of ordinary care.

The instructions ought to have stated to the jury that when the ratchet was stopped, and the defendant informed that the laborers feared the "chain was going to break," it was the duty of the defendant to examine the chain with proper care ; and, not making such examination, he was liable, un- less, had such examination been made, it would have dis- closed the fact that such chain was not defective and unsafe.

The first instruction propounded the law as we have approved it, and was correct. It is unnecessary to consider the motion for a new trial.

The whole Court concur in the syllabus; but myself and Judge Snyder think that the burden of showing that the defendant knew, or ought to have known, that the chain was defective, was on the plaintiff to the end of the case; while Judges Green and Woods think that when the ratchet was stopped, and Dickinson, the defendant, ordered them to "go ahead on the chain," and this without an examination to discover whether there were any defects in the chain which by the use of ordinary care in the examination could have been discovered, the burden of the proof then shifted to the defendant to show that such an examination would have shown that there were no such defects in the chain. As there is no proof in the record on this question, the judgment must be affirmed, the Court being equally divided on this subject, as two of the Judges would, under the evidence, set aside the verdict, and the other two would let the verdict stand, because the burden of proof was shifted as above set forth; and for the same reason the Court is equally divided as to the correctness of the instructions.

AFFIRMED.