WILLIAM  G.  MICHAEL *vs.*  HARRY  STANLEY,  by  his next  friend,  MOSES  STANLEY.

*Master  and  Servant—Injury  to  Servant—Negligence—Onus of  Proof.*

In an action by an employé against his employer to recover for an injury alleged to have been suffered by reason of defective machinery at which the plaintiff was required to work, in the

Michael *vs.* Stanley.

saw-mill of the defendant, it appeared that the plaintiff was eighteen years of age, wanting two months; that he was employed to hand up wood to be sawed by a circular saw ; that on the day of the accident he was directed by the superintendent in the mill to go to a particular saw, while the regular sawyer was otherwise employed, and operate it, and while doing this, in holding a stick of wood to the saw his left hand came in contact with the saw and three of his fingers were cut off.   It further appeared that the saw had two teeth broken out of it, and that it was dull, and that the plaintiff had knowledge of these defects ; that the operation of sawing a stick of wood was simple, and required no special skill in the operator ; and that the plaintiff had acted as sawyer some ten or fifteen times before the injury ; and that on one occasion, some weeks after he entered the employment, he had his hand cut by one of the saws while sawing.  HELD :

That the plaintiff was not entitled to recover.

In an action by a servant to recover for an injury alleged to have been caused through the negligence of the master, the *onus* of proof is upon the plaintiff, and that *onus* requires him to show that the injury was caused solely by the fault or negligence of the master or those representing him ; and the servant will not be entitled to recover, if it be made to appear that the injury would not have occurred but for the fault or negligence of the servant himself, directly contributing to the production of such injury.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial below, the testimony being closed, the plaintiff offered the following six prayers:

1. If the jury find from the evidence that the defendant relinquished all supervision of the work, and entrusted not only the supervision and direction of the work, but the selection and employment of laborers and the procuring of materials, machinery and other instrumentalities to the judgment and discretion of Charles

Michael *vs.* Stanley.

Moore, the foreman or superintendent in such case, and if the jury further find that the injury to the plaintiff was caused by the negligence of the foreman or superintendent, then the plaintiff is entitled to recover if the plaintiff was not negligent.

2. That though an employer is not an insurer of the lives and limbs of his employés, yet he does impliedly engage that he will not expose them to unnecessary, unusual and unreasonable risks to life or serious bodily harm, and if the jury believe from the evidence that the circular saw which plaintiff was ordered to operate was defective, unsafe and unsound, and if they find that it was not plaintiff's duty to inspect the machinery, and that the plaintiff had no knowledge of the defects, or that having knowledge of the defects, was by reason of his age, incapacity and inexperience, ignorant of the risk of operating said saw; and if they further find that the defendant knew or had reason to know the peril to which plaintiff would be exposed, and failed to give plaintiff instructions as to how to operate the saw, and failed to give him sufficient and reasonable notice of the danger attending the operation of said saw; and if they further find that such defective and dangerous machinery was the immediate cause of plaintiff's injuries, and by reason of such defect, said injuries were caused by such defective machinery, without negligrnce on his part, then the defendant is liable.

3. That in deciding this case the jury should determine the nature of the employment on which plaintiff engaged to serve; if the jury find from the evidence that the work which plaintiff was ordered to do, that is the operating of the circular saw, was not within the contract of service, was not one of the duties which plaintiff engaged to do, but was outside of it, then Charles Moore, the foreman, in ordering the plaintiff to perform this particular service in question, if he was in the scope and

orbit of his duties and powers at this time, must, as to this act, be taken to represent the defendant who is presumed to be present, and if that act was wrongful and negligent, the defendant would be liable for the damages caused by such negligent and wrongful act.

4. That the Court instruct the jury as to whether the act of ordering plaintiff to run the saw in question was wrongful and negligent; that negligence is the omission to do something which a prudent and reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing something which a prudent and reasonable man would not do under all the circumstances surrounding and characterizing this particular case, and in this case it is the duty of the jury to consider the age, experience and extent of judgment of the plaintiff and the nature of the service which he was ordered to perform in respect to its being hazardous to life or limb, or otherwise; if the jury should find that a reasonable and ordinarily prudent man would not have ordered plaintiff, a boy of his years under the circumstances, to perform such service because of the hazard, then it was a wrongful and negligent act, and defendant is liable.

5. That the plaintiff is entitled to the presumption that people ordinarily take care of themselves; and that the burden of proof is on the defendant to show that the plaintiff contributed to his own injury.

6. If the jury shall find for the plaintiff, they shall award damages to compensate for the present loss sustained by the plaintiff in consequence of said injury, but they shall also award the plaintiff such future and prospective damages as it is reasonably certain will necessarily and inevitably result from the injury.

The defendant then offered the five prayers following:

1. That if the jury shall find from the evidence in this case, that the plaintiff at the time and place when and

where he suffered the injury complained of, was in the employ of the defendant, and that said injury was caused by, and owing to, the negligence of another servant or servants of the defendant, the plaintiff cannot recover unless he shall satisfy the jury that in selecting the servant or servants, through whose negligence the accident occurred, the defendant did not use due care and ordinary prudence in procuring a faithful and competent servant, or faithful and competent servants; and further, that in this case the plaintiff has offered no evidence from which the jury may find that the defendant did not use such care in the selection of said servant or servants, and therefore their verdict must be for the defendant.

2. That upon the undisputed evidence, the plaintiff directly contributed to the happening of the accident by his own want of care and prudence, and is not entitled to recover.

3. That upon the undisputed testimony in this case, the accident was the direct result of the want of ordinary care and prudence on the part of the plaintiff and his fellow workman or workmen, in doing the work in which the accident occurred, and therefore the plaintiff cannot recover.

4. That even if the plaintiff was ordered to do certain work of a dangerous character by an employé of the defendant, said work being dangerous and other than that which he was employed to do, nevertheless the plaintiff is not entitled to recover, as the undisputed testimony shows that the machinery by which the accident occurred showed plainly the risk of operating it, and was known to the plaintiff, and that said plaintiff undertook said risk with full knowledge of the same.

5. That there is no evidence in the cause of any such negligence on the part of the defendant in discharge of his legal obligations to the plaintiff, as would entitle the plaintiff to recover in this action.

Michael *vs.* Stanley.

The defendant specially excepted to the granting of the plaintiff's first prayer on the ground that there was no evidence to sustain it.

The Court (DUFFY, J.,) granted the plaintiff's first, second, fifth and sixth prayers, and rejected his third and fourth prayers, and rejected the prayers of the defendant, as also his special exception to the granting of the plaintiff's first prayer. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*J. Alexander Preston,* and *Alexander Preston,* for the appellant.

*Harry S. Cummings,* and *Warner T. McGuinn,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

Stanley, the appellee in this case, brought this action against the appellant to recover for an injury alleged to have been suffered by reason of defective machinery at which he was required to work, in the saw-mill of the appellant. The accident occurred on the 18th of January, 1891, and at that time the plaintiff was eighteen years of age, wanting two months.

The defendant was the owner of a steam saw-mill on the west side of Union Dock, in the City of Baltimore, in which he operated four circular saws for the purpose of sawing up kindling and fire-wood in proper lengths for use. Charles Moore was engineer and general superintendent, and Charles Collins, a young man of nineteen years of age was assistant engineer, and sawed wood and

worked generally about the mill. The plaintiff some-time in September or October, 1890, was told by Collins he could get a job at the mill, and the plaintiff thereupon went to the mill, saw Moore, and the latter put the plaintiff to work handing up wood to be sawed. The plaintiff had never worked a circular saw or worked in a saw-mill before that time; that he was paid four dollars a week by the defendant, and that the regular sawyers received five and five-and-a-half dollars a week; that he received no instructions in sawing, and continued to hand up the wood in the mill until December.

According to the testimony, and there is no dispute upon the question, the operation of sawing a stick of wood into any given number of pieces, is quite simple, and requires no special skill in the operator. The most that is required is care to avoid allowing the hands being struck by the revolving saw. The stick is presented to the saw, and pressed to it by hand on each side of the saw until the stick is cut in two, and this is repeated until the stick is cut into as many pieces as desired. On the occasion of the accident, the plaintiff was directed by the superintendent, Moore, to go to saw No. 1 and operate it while the regular sawyer was engaged in attending to the boiler. This was near about 12 o'clock, at which time the hands went to dinner. In presenting or holding a stick of wood to the saw, the plaintiff's left hand came into contact with the revolving saw, and three of his fingers on the left hand were cut off. This occurred as he was sawing the last piece of wood that he had to saw.

The plaintiff was the principal witness to testify in support of his case. He says that he was not hired to saw, but to hand up or pile the wood; and that when he was directed to go to the saw to supply the place of the regular sawyer who was engaged at the boiler, he objected upon the ground that he was not paid the price of a

regular sawyer; but that he went to the saw because he was afraid that he would be discharged if he did not do as he was told to do. He says that the saw had two teeth broken out of it, and that it was dull; and that it was also cracked, and had a hole drilled in it to keep the crack from extending. He says, however, that neither the crack nor the hole had anything to do with producing the injury; but that the injury was produced by the defect in the saw in having the two teeth out, and because it was dull. He says the saw jumped where the teeth were out, and in that way his hand was caught. He admits that he knew perfectly well of the defects in the saw, as did the superintendent, and that he had said that he did not want to be put to work on that saw. He also admits that he had acted as sawyer in the mill some ten or fifteen times before the injury; and that upon one occasion some two or three weeks after he entered the employment he had his hand cut by one of the saws while sawing. He therefore not only had the opportunity of learning how to saw by daily observation of the operation for months, but he had some practical personal experience in the operation itself, and a decided admonition of the danger attending the work, and of the necessity for care.

On cross-examination of the plaintiff he was asked whether he had not been told by a person present at the time, and just before the accident happened, that he was sawing too fast. To this the plaintiff answered by simply repeating the question: "That I was sawing too fast?" Counsel: Yes. Answer by plaintiff: "It was so near 12 o'clock that I kept on sawing; he got so much, he said, 'hold on until I get this wood out;' I said, 'we have to shut down at 12 o'clock.'" The witness referred to testified that the wood was being sawed for him, and that he was taking it away as it was sawed, and that he hallooed to the plaintiff "to look out and take his time, but that the plaintiff sawed on in his own way."

The plaintiff's brother was employed in the mill at the time, in handing up the wood to be sawed, and in giving his testimony for the plaintiff he described the way in which the accident occurred, thus: "I was handing up wood at the time, and he was sawing the wood in six pieces; just as he was cutting the last piece, the saw being dull, he had to shove it too hard, and he cut his fingers; the saw kinder jumped out and cut his fingers on the last piece."

The foregoing are the material facts proved on the part of the plaintiff, and upon which the case was submitted to the jury, upon certain instructions granted at the instance of the plaintiff. All the prayers for instruction on the part of the defendant were rejected; and among these was one to the effect that there was no evidence legally sufficient of any such negligence on the part of the defendant, in the discharge of his legal obligations to the plaintiff, as would entitle the plaintiff to recover in this action.

.We have examined all the testimony in this case with great care; and in view of what would seem to be the well settled legal doctrine applicable to cases like the present, we are clearly of opinion that there is no ground shown upon which the plaintiff can recover. And in coming to this conclusion we assume the truth of all the evidence given on behalf of the plaintiff, and put aside all the countervailing evidence given on behalf of the defendant. The evidence on the part of the plaintiff being insufficient, the prayer asking that the case be taken from the jury should have been granted. Because an accident has happened, and an injury has been sustained by a servant while in the employ and doing the work of a master, even though such work may be attended with danger, it must not be assumed, nor the jury be allowed to speculate in the absence of some definite evidence, that the injury was caused by the negligence or

Michael *vs.* Stanley.

fault of the master, without fault or negligence on the part of the servant. The *onus* of proof is upon the plaintiff; and that *onus* requires him to show that the injury was caused solely by the fault or negligence of the master, or those representing him; and clearly the servant will not be entitled to recover if it be made to appear that the injury would not have occurred but for the fault or negligence of the servant himself, directly contributing to the production of such injury.

The doctrine upon this subject, and the circumstances under which a master may be rendered liable for injury sustained by a servant in his employ, have been considered and reviewed by repeated decisions of this Court,— the most recent of which are the cases of *State, use of Hamelin, et al. vs Malster & Reaney*, 57 *Md.*, 312; and *Yates vs. McCullough Iron Co.*, 69 *Md.*, 370. In the last case, just mentioned, all the previous cases in this State, upon this subject, were carefully reviewed. In that case it was held, as it had been held in the preceding cases, that if the machinery or appliances which the master has furnished contains obvious defects, of which the servant knew, or as a reasonably prudent man he might have known; or if he continues in the service after he has discovered, or by the exercise of reasonable care might have discovered, the existence of such defects, he cannot recover against the master for injuries resulting from such defective machinery. In other words, if the servant has been wanting in such reasonable care and caution as would have prevented the happening of the accident, he is guilty of contributory negligence, and the master is thereby absolved from responsibility for the injury, although it was occasioned by the defect of the machinery through the negligence of the master or his general superintendent. *Washington, &c. Railroad Co. vs. McDade*, 135 *U. S.*, 554, 570.

But it is argued that this case falls within the principle of a class of cases that forms an exception to the gen-

eral rule just stated; that the plaintiff, by reason of his
youth and inexperience, and the want of instruction and
knowledge as to the danger of the use of the saw in its
defective condition, and the fact that he was required to
operate the saw when that service was not within the
scope of his employment, were circumstances to ren-
der the master liable for the injury sustained by the
plaintiff while operating the saw; and the cases of
*Coombs vs. New Bedford Cordage Co.,* 102 *Mass.,* 572; and
*Railroad Company vs. Fort,* 17 *Wall.,* 553, are cited and
relied on in support of the contention.

With the cases just mentioned we make no question
whatever. They were well considered cases, and have
been frequently cited with approval by other Courts of
the country. But neither of those cases has any special
application or bearing upon the present case.

In the first of these cases, that of *Coombs vs. The Cord-
age Company,* the plaintiff, a boy under fourteen years
of age, was employed in defendant's factory to tend
machinery, and on the second day of his employment,
while standing in his proper place tending a drawing-
machine his left hand was caught in the cogs of a ma-
chine standing in dangerous proximity, and badly
injured. And upon that state of case the Court held,
that if the plaintiff was of sufficient age and intelligence
to understand the nature of the risk to which he was
exposed, and had reasonable notice of the dangerous
nature of the service which he was performing, the de-
fendants were not liable. But, on the other hand, if the
defendants knew, or had reason to know, the peril to
which the plaintiff was exposed, and failed to give suffi-
cient or reasonable notice of it, and the plaintiff, *with-
out negligence on his part,* but from inexperience, or reli-
ance upon the directions given him, failed to perceive or
appreciate the danger, and was injured in consequence
thereof, the defendants were liable.

Michael *vs.* Stanley.

In the case of *Railroad Company vs. Fort,* the action was by the father for an injury to his son. The son, a youth of about sixteen years of age, had been employed as helper but a few months in the defendant's machine shop, doing minor work, when he was directed by the superintendent to ascend a ladder to a great height from the floor, among rapidly revolving and dangerous machinery, for the purpose of adjusting a belt by which a portion of the machinery was moved, and while engaged in the endeavor to execute the order had his arm torn from his body. The Court held the father entitled to maintain the action, principally upon the ground that the father had a right from his contract to believe that his son would not be so exposed; and that the son's inexperience and youth prevented him from giving any assent in taking such a risk, which could avail the defendants as a defence.

It is obvious, from the statement of those two cases, that they have no special application to this; and that each case must essentially depend upon its own peculiar facts and circumstances.

In this case there is not a particle of evidence to show that the plaintiff was without knowledge of the defect in the saw, or that he suffered the injury by reason of immature age, incapacity or inexperience. His own testimony clearly shows the contrary. Being near about eighteen years of age, and holding himself out as competent to do ordinary work, he must be presumed to have had the ordinary intelligence of persons of that age; and with his opportunities for learning, it is but reasonable and fair to presume that he understood the risk of using the saw, and knew that there was necessity for the exercise of care to prevent being injured—to say nothing of his right to refuse to do work for which he was not employed. In the case of *Williams vs. Churchhill,* 137 *Mass.,* 243, the defendant, an owner and master of a steam tug,

ordered the cook to go forward and handle the bow-line, and he got entangled in it and was injured. He· was usually employed at the stern, a place less dangerous than at the bow. The defendant did not warn him, but urged him to the duty with an oath. The plaintiff was nineteen years old, and had been to sea, and had been on the tug four months. And it was held that a verdict for the defendant was right, and that it should stand. See also the case of *Leary vs. Boston & Albany Railroad Co.*, 139 *Mass.*, 580.

And in the case of *Atlas Engine Works vs. Randall*, 100 *Ind.*, 293, the plaintiff was about nineteen years old, and where the master, through the superintenddent of the works, directed the young man to wipe off a machine while in motion, without caution as to the danger of so doing; yet, because the danger was apparent, and the young man in doing the work allowed the material used by him for wiping the machine to hang down and be caught in the cogs below, whereby his hand was badly injured, it was held that he was not entitled to recover.

Now, in this case, as we have already shown, it is manifest from the plaintiff's own testimony, that he was not placed in a position, or to do work, of an unknown danger, and that he was not in fact exposed to risks which he, by reason of immaturity of age or other cause, failed to comprehend. As said in the case last cited, "no extraordinary caution or peculiar skill was necessary to avoid the injury sustained. Nothing was necessary except that the plaintiff should give at tention to his hands, over which he had complete control."

It results that the judgment must be reversed without the award of a new trial.

*Judgment reversed,*
*without new trial.*

(Decided 15th March, 1892.)