JOHN CULLITY, administrator, *vs.* EDWARD C. JOHNSON & others.

Suffolk. December 8, 1919. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Negligence*, Employer's liability. *Dumb-waiter. Elevator.*

A boy eighteen years of age, who had left school at the age of twelve years, was somewhat dull and slow and within a few months had been at a home for consumptives, entered employment in a retail dry goods establishment and, thirty-two days later, was struck on the head by an ascending dumb-waiter used to carry small parcels from the second floor to the shipping department in the basement. He afterwards died from the injuries thus received. In an action by the administrator of his estate against the proprietors of the store for the

causing of his conscious suffering and death through negligence, it appeared that the dumb-waiter was a box, the bottom of which was sixteen by twelve inches, that it was operated by means of a rope running over a pulley in the top of the well on the same floor with the plaintiff's intestate, the rope at one end being attached to the box and at the other end carrying a counterweight somewhat heavier than the box, that the well was enclosed, containing an opening into it on the floor where the plaintiff's intestate was, through which he had thrust his head to signal for the elevator upon learning that an electric signal bell was not working. The details of the operation of the dumb-waiter were obvious to the casual glance. There was evidence that the dumb-waiter travelled the distance of twenty-six feet from the basement to the place where it struck the plaintiff's intestate in six and one half seconds. The elevator was not defective. *Held*, that the defendant was under no duty to warn or instruct the plaintiff's intestate as to the obvious dangers attending the use of the dumb-waiter and that the evidence did not warrant a finding of negligence on the part of the def-_dant.

The provisions of R. L. c. 104, § 27, relating to the construction of elevator cabs or cars used for freight or passengers and to safety appliances connected with their operation, do not apply to a dumb-waiter used in a retail dry goods establishment for carrying small parcels from the second floor to the shipping department in the basement.

TORT, with a declaration as amended in thirteen counts, for the negligent causing of the conscious suffering and death of Thomas Cullity on October 20, 1911, when he was employed by the defendants, doing business under the firm name and style, C. F. Hovey and Company. Writ dated March 8, 1912.

In the Superior Court the action was tried before *Hall*, J. The material evidence is described in the opinion. At the close of the plaintiff's evidence, the defendants rested and the judge ordered a verdict for them and, at the request of the parties, reported the case to this court for determination, it being stipulated that, if the order for the verdict was right, judgment was to be entered thereon, but if, upon all the evidence which was properly admissible and ought to have been submitted to the jury, the case ought to have gone to the jury, judgment was to be entered for the plaintiff in the sum of $1,000.

R. L. c. 104, § 27, is as follows: "Elevator cabs or cars, whether used for freight or passengers, shall be provided with a suitable mechanical device by which they will be securely held in the event of an accident to the shipper rope or hoisting machinery, or any similar accident, and they shall be guarded and equipped with some attachment or device fastened to the elevator cab or car, elevator well, or floor of the building, which shall prevent any

person from being caught between the floor of the cab or car and the floor of the building while attempting to enter or leave the elevator. Elevators used for carrying freight shall be equipped with a suitable device which shall act as a danger signal to warn people of the approach of the elevator. Elevator wells hereafter built shall be so constructed that that part of the inside surface of the well which comes in front of the opening or door of the cab or car shall be flush with the cab or car, and the door opening from said elevator well into the building shall be placed not more than two inches back from the face of said well, so as to allow no space for a foothold between the car and well door of the building. All the above construction work and devices shall be approved by the inspectors of factories and public buildings, except that in the city of Boston they shall be approved by the building commissioner, and in other cities by the inspector of buildings; but, upon the approval of said commissioner, or inspector of buildings, or inspector of factories and public buildings, any elevator may be used without any or all of such appliances or devices if the nature of the business is such that the necessity for the same will not warrant the expense."

The case was submitted on briefs.

*A. Berenson & H. U. Smith,* for the plaintiff.

*W. Flaherty & R. Clapp,* for the defendants.

DE COURCY, J. The plaintiff's intestate, Thomas Cullity, was injured on October 20, 1911, while working in the retail dry goods establishment of the defendants. A dumb-waiter was used for carrying small parcels from the second floor of the building to the shipping department in the basement. It is described as a box, the bottom of which was sixteen by twelve inches. It was operated by means of a rope, which ran over a pulley in the top of the well, the rope at one end being attached to the box, and at the other end carrying a counterweight somewhat heavier than the box or "car." It moved in an enclosed chute or well, which extended to the ceiling of the second floor. There was an opening in the chute about three feet above the floor of the room; and the box was open on that side, where parcels were put in. The dumbwaiter rope was in plain view; and one standing near the opening could see downward into the well a distance of ten or twelve feet.

The intestate was almost eighteen years of age. He had left

school when twelve years old, and was somewhat dull and slow. From September, 1910, to June, 1911, he had been at a home for consumptives. About September 8, he went to work for the defendants, and during the last week was employed on the second floor. There was no evidence as to what work he did there. The only account of the accident comes from alleged statements made by him to his father and mother. This was, in substance, that he had a parcel to put on the "car;" that it was not at the opening; that the electric signal push button did not work; that he put his head into the well, to call for the dumb-waiter (or to pull the rope), and the car, which was coming up, struck him on the forehead and caused him to fall backward.

There was no evidence of any defect in the condition of the dumb-waiter or of the rope or pulley connected therewith. There was no hidden danger in the construction of this commonly used appliance, and the details of its operation were obvious to the casual glance. The only element of alleged danger was the speed with which the car moved, — the plaintiff's expert testifying that in its course of twenty-six feet from the basement to the second floor it took only six and one half seconds. As to the other causes of action set forth in the thirteen counts, it is enough to say that they are without support in the evidence; and manifestly the provisions of R. L. c. 104, § 27, are not applicable. Even assuming that the defendants might owe a duty to an inexperienced employee to warn him of this speed if he had occasion to put his hand within the well, they certainly did not owe the eighteen year-old intestate a legal duty to warn or instruct him not to put his head into the line of passage of the dumb-waiter when it was moving or might be expected to move toward him. Nor were they under any obligation to him to change the construction of this simple mechanism for carrying parcels. The record fails to disclose negligence on the part of the defendants.

It is unnecessary to consider whether there was any evidence for the jury of the intestate's due care. *Ramsdell* v. *Jordan,* 168 Mass. 505. *Hydren* v. *Webb,* 219 Mass. 542, 546, and cases cited.

In accordance with the report, judgment must be entered on the verdict for the defendants.

*So ordered.*