ARMEN MOHAMMED *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.   March 7, 1935. — March 25, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Negligence*, Employer's liability.

A verdict for the defendant properly was ordered at the trial of an action by an experienced workman against his employer, who was not insured under the workmen's compensation act, for personal injuries sustained when a large wrench which the plaintiff was using to tighten caps on a boiler slipped and struck his hand, where the evidence showed that, although the wrench was not a suitable one for the defendant to furnish to the plaintiff for that purpose because it did not fit the caps snugly enough and although the plaintiff showed the

wrench to the defendant's foreman and told him that it was too large, to which the foreman replied, "It's all right. You go and do that job, finish that job this afternoon. Get you wrench tomorrow morning," the plaintiff, who thereafter worked several hours with the wrench before he was injured, knew when he began to work with it that it did not fit the caps snugly; and that the risk of its slipping and the danger attendant upon its slipping were obvious to him without a warning or instructions from the defendant: the evidence did not warrant a finding of negligence on the defendant's part.

TORT. Writ dated January 14, 1930.

The action was tried in the Superior Court before *Bishop,* J., who ordered a verdict for the defendant at the close of the plaintiff's evidence. The plaintiff alleged exceptions. Material evidence is stated in the opinion.

*J. J. O'Hare,* (*L. A. George* with him,) for the plaintiff.

*H. Lawlor,* for the defendant.

PIERCE, J.    This is an action of tort wherein the plaintiff seeks to recover damages for personal injuries sustained by him, on or about June 18, 1929, while employed by the defendant at its car shop in Readville, Massachusetts. The case was tried in the Superior Court to a jury on three counts, each of which alleged that the defendant was engaged in interstate commerce, and on a common law count for negligence of the defendant, its agents and servants. The defendant was not insured under the provisions of the workmen's compensation act. The plaintiff abandoned the three counts under the Federal employers' liability act and relied on the common law count in his amended declaration. The answer of the defendant, in substance, contains a general denial, an allegation that the plaintiff gave a general release for a valuable consideration which discharged and released the defendant from all claims on account of any injuries received by the plaintiff while employed by the defendant company on or about June 21, 1929, and allegations of contributory negligence of the plaintiff and of a contractual assumption of the risk which resulted in the accident to the plaintiff. At the conclusion of the plaintiff's evidence, subject to the objection and exception of the plaintiff, the judge, on motion of the defendant, directed a verdict for the defendant.

The record in its aspect most favorable to the plaintiff's action disclosed the following: The plaintiff went to work in the Readville shop for the defendant in 1924. From that time until the accident he worked on boilers and the "flexible caps" in the locomotive shop, putting them on and taking them off. He testified that he worked on engines as he was told to do; that he did not do anything for himself; that the foreman would say, "Do this," and he did it; that after the foreman said, " 'That engine there, the caps you wants to put on, put all caps on it ready for the test,' I go in. You get the information from the boss. Maybe that engine don't want to have put any of those bolts. Those bolts have to be taken out, changed over. His job as boilermaker out there was to take off those caps and his job out there at the Readville shop was to put those caps back on and he knew just exactly how to do that work, and for five years he knew how to do that work." On the day of the accident he arrived at the Readville shop at about seven o'clock in the forenoon and reported to his boss. He worked four or five hours putting caps on an engine that was there; then the boss told him "to go to the test" on another engine, the one on which he was hurt. He illustrated the meaning of the phrase "go to the test" by the statement which follows: "I examine the engine if it is leak or no leak." "Some caps leaking, some caps no leak. Any caps is leaking, drop some water, I try to tighten just a little bit." The plaintiff testified that he was working on a large engine seventy-five feet long and ten or fifteen feet high; that this engine was stripped (that is, the lagging had been removed, which is the covering outside, sheet metal covering and asbestos); and that on this engine there were no bolts to take off, "somebody take them off. Just tighten the caps. Just tight the caps." The plaintiff had a box for his tools where they were kept at night. He got a wrench out of his box in the morning of the accident, and missed it later. Before going to work on the engine on which he was hurt he put his wrench on the engine and went away to get some caps; when he returned he did not see his wrench. He went to the storeroom and asked for a wrench.

One was given to him and the plaintiff said, "any fellow give you any wrench little while ago? I put my wrench on the boiler, somebody take it." "He says, 'No, only one I have.'" "I give him check, I take the wrench." He further testified: when he got the wrench, he took it to the job and worked with it tightening caps a little while, then "I see the wrench a little bigger. Then I take the wrench and I show it to the foreman. 'Somebody take my wrench,' I tell him, 'and that wrench is just a little bigger.' He say, 'You say somebody stole your wrench?' I say 'Yes.' 'The only one he had in the tool room.' He says, 'Let's see that wrench.' I show him the wrench. He looked at the wrench. He says, 'It's all right. You go and do that job, finish that job this afternoon. Get you wrench tomorrow morning. What the . . . do you think I do.'" As to what followed the plaintiff testified: "I scared, and I go on the job. . . . I tighten some caps," and after a while "the wrench slip off, hit my hand right here [indicating]." When he got hurt he had worked on the engine two or three hours and had put on with the wrench he got from the storeroom about one hundred fifty caps before he hurt his hand. After the accident the plaintiff went up to the station and said to the foreman, "Look my hand, foreman, look my hand now. Wrench slip off the cap." "And he say, 'I am sorry. Go ahead in the hospital.'" There was evidence that the wrench furnished was about three feet long; that the jaws of it, when put around the caps, fitted loosely to the extent that they had approximately one eighth of an inch stretch or widening all around; and that it was not a suitable wrench for the defendant to furnish the plaintiff for the particular purpose because there would be considerable danger of the wrench slipping off, and of an accident, due to the "play" of its jaws.

There is no evidence in the record that the plaintiff ever gave notice to the defendant in any form that he claimed damages for his injury under G. L. (Ter. Ed.) c. 153, and no evidence or claim by the plaintiff that the wrench which was furnished was other than perfect of its kind. The

only count of the declaration not waived is a common law count and we consider the plaintiff's exceptions on that footing.

There is nothing in the record other than the plaintiff's lack of familiarity with the English language to show that he did not have a full and complete appreciation of the fact that the wrench furnished did not fit snugly upon the sides of the caps the moment he applied the wrench, and he does not contend otherwise. He had been engaged for years in tightening or loosening caps on locomotive boilers. The risk that a wrench, which did not fit snugly a nut or a cap, might slip when pressure was applied to it must have been obvious to him and to any employee engaged in the same kind of work. Manifestly he had as much knowledge of the danger of a loose fitting wrench slipping when used as his employer or his foreman had and needed no warning or instructions of the danger attending the use of such a tool. The plaintiff apparently recognizes in his brief that the evidence shows a knowledge and appreciation on his part of the danger which attended the use of the particular wrench, and seeks to avoid its common law legal consequence by the claim that the order of the foreman, "You go and do that job, finish that job this afternoon. Get you wrench tomorrow morning. What the . . . do you think I do," required him "to use a negligent and dangerous method"; that there was compulsion in the order; that there was an element of haste and hurry; that the natural effect of the foreman's language was to frighten the plaintiff; that this "danger was not one which grew naturally out of the employment or was subject to it"; and that "The danger in this case was owing wholly to an isolated act of carelessness on the part of a foreman." We think that the foreman's direction to the plaintiff to return to his work in the circumstances was not negligence. *Williams* v. *Churchill*, 137 Mass. 243. As the plaintiff has no common law right of action, it becomes unnecessary to consider his exceptions relating to the release which was set up in the answer of the defendant. The verdict for the defendant was directed rightly.

*Exceptions overruled.*