EDWARD J. BELLIVEAU, administrator, *vs.* HANS KNUTSON
(and a companion case[1]).

Bristol.    January 11, 1952. — April 2, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence,* Employer's liability: warning, watchman on vessel.

Evidence did not warrant a finding of negligence through failure to warn
on the part of the owner and the master of a fishing vessel toward a
boy about seventeen years of age who was hired as a watchman of the
vessel during two nights in December and who thereafter was found
dead from coal gas in a small forecastle below the deck at the bow of
the vessel where there had been a fire in an ordinary coal stove with the
dampers of the stove and the means of ventilating the forecastle
closed.

TWO ACTIONS OF TORT.    Writs in the Superior Court dated
December 1, 1947.

The actions were tried before *Forte,* J.

*A. W. Parker,* for the plaintiff.

*C. R. Desmarais,* for the defendants.

QUA, C.J.    These two actions are both brought to re-
cover for the death of the plaintiff's intestate, a boy seven-
teen years and five months of age, which occurred between
Saturday, December 8, and Monday, December 10, 1945,
on a fishing vessel then lying in navigable waters at a wharf
in the port of New Bedford.    The first action is against the
master of the vessel and is an attempt to recover under the
Massachusetts death statute.    The second action is against
the executrix of the will of the owner of the vessel and is
brought under the Jones act, U. S. C. (1946 ed.) Title 46,
§ 688.    The plaintiff excepts to the direction of verdicts for
the defendants and to the exclusion of certain evidence.

_____

[1] The companion case is that of Edward J. Belliveau, administrator, against
Helen Jacobsen, executrix of the will of Jacob E. Jacobsen.

The evidence tended to show these facts: On December 8, 1945, Knutson, the master of the vessel, duly authorized by Jacobsen, the owner, employed the deceased as a watchman to watch the vessel during the nights of Saturday, December 8, and Sunday, December 9. In the bow of the vessel below deck was a forecastle as to the dimensions of which there was great variation in the evidence. The largest estimate made it eighteen to twenty feet long, eight to nine feet high, and as wide as the vessel. Other evidence made it very much smaller than this. Since the forecastle was in the bow, it narrowed at the forward end. In it were a coal stove and some bunks. On the morning of December 10 the deceased was found lying dead in one of these bunks. The remains of a fire were still alive in the coal stove, the dampers of which were closed. The hatchway leading down into the forecastle was closed, as was also a ventilator in the ceiling. The cause of death was coal gas.

The only testimony as to the instructions given the deceased came from Knutson. He testified that he told the deceased that the forecastle was locked up, that there was no fire there, and that he did not have to go there. He further testified that the pilot house was heated by radiators; that he told the deceased that he was to watch the boat from the pilot house and showed him the keys to the pilot house, but did not show him the key to the forecastle; that he did not tell him about the slide in the ventilator, nor how to operate the coal stove, nor about the need for keeping the hatchway open. The jury, however, would not have been obliged to believe the parts of this testimony unfavorable to the plaintiff, and there was evidence that it was customary for the watchman to make a fire in the forecastle to keep warm, to make coffee, and to cook food. There was no evidence that the deceased made coffee or did any cooking.

In our opinion there was no evidence for the jury of negligence of either defendant. The stove was an ordinary coal stove. There was no defect in it or in the forecastle or in any of the equipment of the vessel. The only negligence claimed is failure to warn. There was no evidence that the

boy was not of average intelligence for a boy of his age. Such evidence as there was tended to show that he had had several jobs, and that he then had a regular day time job. He had watched this same vessel for eight nights only a fortnight before. What he was told at that time does not appear. Even if the jury could find that the deceased, under the terms of his employment, was not precluded from going into the forecastle and using the stove, we think it would be unreasonable to hold the defendants bound to anticipate, when the deceased was hired to watch the vessel, that he would build a coal fire in the forecastle, would fully close the dampers, would close the hatchway, and would go to bed with no ventilation. It seems to us that the defendants could reasonably assume that the deceased was competent to cope with a situation no more complicated than that presented by an ordinary coal stove in a small space and that he needed no warning. *Williams* v. *Churchill,* 137 Mass. 243. *Whalen* v. *Rosnosky,* 195 Mass. 545. *Cote* v. *D. W. Pingree Co.* 205 Mass. 286. *Cullity* v. *Johnson,* 235 Mass. 137. *King* v. *Smart,* 240 Mass. 174. *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303. *Drake* v. *Boston Safe Deposit & Trust Co.* 307 Mass. 399. See *Lake* v. *Standard Fruit & Steamship Co.* 185 Fed. (2d) 354.

The excluded evidence need not be discussed. We have dealt with the case as if it had been admitted.

What has been said disposes of both cases without consideration of other questions.

*Exceptions overruled.*