## EAST TENN., VA. & GA. RAILWAY CO. *v.* SMITH.

There being sufficient evidence to uphold the verdict, and the trial judge being satisfied therewith, his discretion in refusing a new trial will not be interfered with.

November 14, 1892.

Railroad employee. Machinery. Negligence. Before Judge VAN EPPS. City court of Atlanta. June term, 1892.

Action for damages to the plaintiff while in the defendant's employment as a flagman or brakeman. While he was putting on a brake in the discharge of his duty, the brake-wheel flew off, he was thrown to the ground and his leg was cut off by the train. He obained a verdict for $5,000, and the defendant moved on the general grounds for a new trial, which was denied.

DORSEY, BREWSTER & HOWELL, for plaintiff in error.
HOKE SMITH and J. T. PENDLETON, *contra.*

SIMMONS, Justice.

There was no complaint of any error in the charge of the court or in the rulings made during the trial. It was conceded that the jury were fully and fairly instructed as to the law of the case. The sole question

to be considered is, whether the verdict is supported by the evidence.

We think it is clear enough from the evidence that the railroad company was negligent with respect to the condition of the brake-wheel, and that the injury was due to that cause. A rule of the company declared that brakes should be considered in bad order unless the brake-wheel was secured to the shaft with a properly fitted nut; and it was the duty of the car-inspectors to make regular and frequent examinations to see that the brakes in this respect as well as in others were kept in good order. Any failure in this duty was likely to be attended, as it was in this case, with serious injury to the employees whose duty it was to use the brakes. If the threads at the head of the staff over which the nut was fitted were worn, the nut was liable to work off when the wheel was used. A few hours before the injury occurred, the car-inspector at Rome examined the brake in question, but gave a merely casual inspection to the nut. He did not test it, and did not climb upon the car to look at it. From examinations made after the injury, on the same night and the next morning, it was found that the shoulder of the brake-staff and the threads over which the nut was fitted were broken and badly worn, and this condition, apparently, was not new, but had existed for some length of time. The insecure condition of the nut from this cause, although not perceptible on a casual and hasty inspection, could easily have been discovered by such an inspection as it was the duty of the car-inspector to make.

It was contended that if the railroad company was negligent in failing to ascertain this condition, the plaintiff was equally so, as he also was charged with the duty of inspection; a rule of the company, which was put in evidence, requiring that every employee, before using any part of the machinery connected with the

running of the trains, should for his own safety examine and ascertain, as far as he reasonably could, as to its condition and soundness. This duty, however, is to be measured by the employee's opportunities, in the light of his situation at and before the time he makes use of the machinery. The law and the rule above referred to merely require him to examine as far as he " reasonably " can. To charge the plaintiff with knowledge of the insecure condition of the brake-wheel and with negligence in having used it in that condition, he must have had reasonable time and opportunity to ascertain that such condition existed, and must have failed to examine as far as he reasonably could under the circumstances in which he was placed. Looking to the evidence bearing upon this part of the case, we find that the plaintiff's duties on that particular train began at Rome when the train was turned over to the crew by the yardmaster under whose supervision it was made up, and that during the trip from that point to the place where the injury occurred, a distance of about sixty miles, he was occupied in attending to the brakes on several cars, the grades being heavy and it being frequently necessary to turn the brakes on and off; that there were twenty-five loaded cars in the train, besides the cab at the rear, and there was but one other brakeman besides the plaintiff, and that brakeman's place was at the front of the train. Up to the time of the injury, the plaintiff had not used the brake in question, because the car to which it was attached was difficult of access from other parts of the train, and it was usually necessary when the brakes had to be put on or taken off, to do so hurriedly, and to go quickly from car to car; so throughout the trip he had confined his braking to a series of box-cars, on the tops of which he could move about with ease. The brake in question was on a coal car in the rear of the box-cars and was separated from

them by several cars loaded with coal and machinery; and back of that car was another, loaded with a large oil-tank which nearly covered it, and that in turn was followed by the cab; so that whether the brake was approached from the cab or the box-cars, it was very difficult to get to it while the train was moving.  Just before the injury occurred, the plaintiff's duty required him to leave the train at a station to get certain orders, and when the train left he got aboard the cab, where he read the orders.  It was then dark.  A few minutes after, while descending a steep grade toward the river, where they were putting in new trestling, it became necessary to put on the brakes, and the plaintiff got on the tank-car next the cab and turned the brake of that car, but found that the chain was loose and it would not work; and he then made his way to the next car, where the brake in question was.  He testified that he held up his lantern and looked at the nut which held the brake-wheel, and finding it in place, he put the lantern down and turned the wheel to find whether it would work properly.  Everything was apparently in proper condition, and he continued to turn the brake-wheel until suddenly it came off and he fell between the cars.  He stated that his examination of the condition of the wheel, etc., was the best it was possible for him to make under the circumstances.  The situation was such that he had to act quickly.  Whether the plaintiff exercised due diligence and examined as far as he reasonably could under the circumstances the condition of the brake-wheel, etc., before using it, was a question for the jury; and in the light of this evidence we cannot say that in finding that he did, their verdict was without evidence to support it.

After a careful reading of the whole of the evidence in the record, we are satisfied that the discretion of the trial judge in refusing a new trial should not be interfered with.                    *Judgment affirmed.*