# CHARLESTON.

## BEALL *v.* PITTSBURGH C. & ST. L. R'Y CO.

Submitted June 8, 1893.—Decided November 22, 1893.

1. DAMAGES—CONTRIBUTORY NEGLIGENCE—RAILROAD COMPANIES.
   One of the rules of a railroad company reads as follows "They" (the brakemen) "are charged with the management of the brakes. and the proper display and use of the signals. They must examine and know for themselves that the brakes, ladders, running boards, steps, *etc*, which they are to use, are in proper condition, and, if not, put them so, or report them to the proper parties, and have them put in order before using." *Held*, If a brakeman on a train, knowing such rule of the railroad company, also knowing that the nut on top of the standard of the

brake, used to hold the brake-wheel on, was off, but without putting it in proper condition himself, or reporting it to the proper parties, uses it unnecessarily to check the speed of the train, by which use the brake-wheel comes off, throwing him onto the track, whereby he is injured, such brakeman is guilty of contributory negligence, at least ; and in such case no recovery should be had against the railroad company.

2. NEW TRIAL.

Where the verdict of a jury is wholly without evidence on a point essential to a finding or the evidence is plainly insufficient to warrant such finding by the jury, the same should be set aside, and a new trial awarded.

J. J. JACOB for plaintiff in error cited 24 W. Va. 37; 27 W. Va. 145; 28 W. Va. 617; 100 U. S. 213; 32 W. Va. 487; 16 W. Va. 307, p't 16 Syll.; 11 W. Va. 34; 25 W. Va. 573; 27 W. Va. 163; 35 W. Va. 389; 128 U. S. 91; Id. 443; 130 U. S. 649; 27 W. Va. 32, 53; 27 W. Va. 285, p't 5, 8, Syll.; 34 W. Va. 500; 14 W. Va. 180; 116 U. S. 642; 46 Ill. 99; 119 Ill. 51; 72 Ill. 138; 60 Mich. 502; 31 W. Va. 143; 33 W. Va. 135; 55 Ill. 492; 36 W. Va. 83; Id. 415.

J. B. SUMMERVILLE for defendant in error cited 20 Mich. 105; 14 S. E. Rep. 432; 12 S. E. Rep. 819; 33 Ohio St. 227; 67 Mo. 239; 43 Ill. 420; 29 W. Va. 98; 6 S. E. Rep. 53; 10 S. E. Rep. 39; 16 S. E. Rep. 62; 83 Va. 288; 46 Ill. 99; 72 Ill. 138; 14 Am. & Eng. Ency. of Law 863; 14 S. E Rep. 12; 42 Wis. 520; 54 Wis. 257; 92 Ill. 139; 93 Ill. 580; 48 M. E. 113; 119 Ill. 51; 6 Sup. Ct. R. 490 (opinion of FIELD, Judge, 597); 14 Am. & Eng. Ency. of Law 66; 17 S. E. Rep. 386; 5 Ohio St. 541; 45 Mich. 212.

HOLT, JUDGE:

On the 4th of May, 1891, at 6:40 P. M., Lucian Beall a brakeman on the defendant company's railroad, while using his brake in the city of Wheeling was thrown off the moving car, run over and killed. The immediate cause of the accident was the fact, that, when he attempted to check speed by turning the brake-wheel, it came off the brake rod, thus causing him to fall off in front of the moving train. The nut at the top of the rod, which holds down the brake in its place, was then and there dis-

covered to be missing, and that part of the rod where the wheel rested, and where the nut was screwed on, was rusted, indicating that it had been off for two or three days or longer. He had applied the same brake once or twice during the same trip. The defendant had employes whose duty and business it was to inspect cars coming in and going out, taking them as a whole when the train was made up. In addition to that a written rule of the company made it the duty of and required of its brakemen to examine and know for themselves that the brakes which they were to use were in proper condition, and if they were not, put them in such condition, or report them to the proper person and have them put in order before using. Of this rule decedent had been informed before the accident.

On July 26, 1891, Grafton Beall, the administrator, brought in the Circuit Court of Ohio county against the railway company an action on the case, claiming ten thousand dollars damages, the maximum fixed by the statute in such cases. The defendant appeared and demurred to the declaration, and his demurrer was overruled. The defendant then tendered a special plea in writing, to which plaintiff objected, but the objection was overruled, and the plea was filed; also, the general issue, "Not guilty;" and issues were joined. But afterwards on motion of plaintiff, the special plea was stricken out, and defendant excepted. Then came a jury, who, after hearing the evidence, arguments of counsel, and instructions of the court, brought in a verdict for plaintiff, assessing his damages at two thousand dollars which the defendant moved the court to set aside and grant a new trial; and the court after taking time to consider set the same aside and awarded a new trial, for reasons stated stated in a written opinion, found filed as a part of the brief of defendant's counsel, and to this plaintiff excepted and obtained this writ of error, as allowed by the ninth clause of section 1, c. 135, Code 1891, without waiting for the new trial to be had.

The plaintiff assigns three errors: first, in refusing to allow the witness Charles Ray to answer certain questions propounded by plaintiff; second, in granting a new trial

without requiring the defendant to pay costs; and third, in setting aside the verdict, and granting a new trial.

The question propounded by plaintiff, and ruled out by the court, is as follows: "Now, with the train running at the rate of speed you describe, what opportunity would Lucian Beall have had, when going to turn on the brake, to have examined to see whether or not the nut was safely and securely fastened on the wheel?" The record discloses no ground of objection by defendant, or of rejection by the court. The witness had already said that the train was running faster than its usual rate of speed, and that, if Mr. Beall had taken time to look, he could have seen whether the nut was on or off. Plaintiff then changed the form of his question: "What opportunity would he (Beall) have to make an examination of the brake wheel?" This was also objected to and ruled out. The witness then stated that it was getting rather dusk when the accident happened, but was not quite time for "our lamps," but was getting that way. "The wheel and standard are dark red, as iron is. He did not see any of the nuts that went on the brake wheel that night, but had seen them before." Counsel for plaintiff then proposed to ask the following questions: "How did the color of the nut compare with the color of the rod and brake wheel?" but the defendant objected, and the objection was sustained, and plaintiff excepted. The counsel for plaintiff explained to the court the purpose and object of the questions; and, as far as I can see, the evidence attempted to be adduced was competent and relevant. But the plaintiff was not injured by the exclusion, for the verdict was in his favor, and the court permitted a subsequent witness called by defendant to be examined on the subject; so that the error is not likely to be repeated. See *Ruffner* v. *Hill*, 31 W. Va. 428, 431 (7 S. E. Rep. 13.)

As to the second error assigned the law on the subject now reads as follows: "New trials may be granted upon the payment of costs or with costs to abide the event of the suit as to the court may seem right." Code, (1891) c. 138, s. 5. The court exercised its discretion in permitting the costs to abide the event of the suit, as authorized by the statute. See *Miller* v. *Rose*, 21 W. Va. 291; *Shrewsbury* v.

*Miller*, 10 W. Va. 115 ; *Ruffner* v. *Hill*, 31 W. Va. 428 (7 S. E. Rep. 13). These questions, however, are treated by the counsel as of no importance, and properly so, unless the case should be again tried, when they may not arise ; and the same may be said in regard to some of the instructions.

The main question, the only one of practical importance in the present attitutde of the case, is the one discussed by Judge PAUL, who presided at the trial, and whose written opinion is given below, as it appears in defendant's brief. I regard it as a fair and accurate statement of the substance of the material facts, to be gathered from the testimony in the record, cautiously restrained within the limits of no conflict, together with a review of some authorities bearing upon the point of law involved, under the doctrine of contributory negligence.

But counsel for plaintiff contends that, whatever may be the rule in Illinois and in some other states as to the duty of the railroad to furnish safe machinery and appliances, and as regards thereafter continually inspecting and keeping the same in repair, such restricted view of the company's duties is certainly not in accord with the rule in this state, as stated in the cases of *Cooper* v. *Railroad Co.*, 24 W. Va. 37 ; *Riley* v. *Railroad Co.*, 27 W. Va. 145 ; *Madden* v. *Railroad Co.*, 28 W. Va. 610 ; *Johnson* v. *Railroad Co.*, 36 W. Va. 83 (14 S. E. Rep. 432); *Daniels Adm'r* v. *Railroad Co.*, 36 W. Va. 415, 416 (15 S. E. Rep. 162); that conceding that no damages can be recovered, if the brakeman knew or could have known by ordinary attention the imperfect and dangerous condition of the brake, when he used it, yet that was a question of fact fairly placed before the jury for their decision almost in the precise language of this Court in the case of *Humphreys* v. *Newport News M. V. R'y Co.*, 33 W. Va. 135 (10 S. E. Rep. 39) and *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. Rep. 53); and the jury in response thereto having found against the defendant, that the cases in Virginia and West Virginia did not authorize the court to reverse such finding and to set it aside.

Among the rules of law prescribing the duties of railroads as common carriers, according to our cases cited above, I regard no one as more exacting or as standing on

higher ground of public policy, than the one which exacts in a reasonable degree continued supervision, inspection and watchfulness to see that all machinery and appliances are kept in good and safe repair, and the track kept safe and clear. Such watchfulness is the price of safety to their own people, as well as to the public; and hence we often see them bringing to the discharge of this duty great intelligence and skill and constant and anxious care and forethought.

We find the defendant in this case, in furtherance of the discharge of such duty, making the brakeman in explicit terms by printed rule a special inspector of the appliances which it is his duty to use. "The brakemen must examine and know for themselves that the brakes, *etc.*, which they are to use are in proper condition, and, if not, put them so, or report them to the proper parties, and have them put in proper order before using them." Extract from section 240 of company's rules, *etc.* The freight conductor "must see that the cars in their trains are in good order before starting, and inspect them, when the train stops for water or for other trains." Rule 266. The car inspectors "must inspect all cars passing their stations, especially the running gear and brake fixtures, and make such repairs as may be required. They will send to the shop all cars not fit for service." Rule 360.

The rule 240 was distinctly and expressly brought to the knowledge of the deceased brakeman more than once. The violation of duty on the part of other inspectors of machinery and appliances did not relieve him from the duty of inspection, which involved the safety of others, as well as his own. "If he knew, or might have known by ordinary attention, the condition of the brake, and thus exposed himself to danger; in other words, if he did not use his senses as men usually use theirs to keep from harm—the plaintiff can not complain of the injury which he suffered." *Railroad Co.* v. *Herbert*, 116 U. S. 642, 655 (6 Sup. Ct. 590). The brake with the nut off was dangerous, and the brakeman must use diligence and care in protecting himself from harm; nor can any recovery be had if the accident was the direct result of his own disobedience of orders (*Knight* v. *Cooper*, 36

W. Va. 232—14 S. E. Rep. 999) or of his violation of a reasonable rule made by the company for the safety of its servants, of which he had notice (*Overby* v. *Railway Co.*, 37 W. Va. 524—16 S. E. Rep 813.)

The testimony of plaintiff's own witnesses shows that there had not been a nut on the standard for some time. "It was rusty where the nut fits on, and the rust shows there had not been a nut on for some time." Now, it is easy to imagine circumstances in a case of emergency, for example, in which the brakeman would be called on to rush to and use a brake without looking down to see if the nut was on. But that is not this case. The evidence shows that, as the train backed down at about the rate of six or seven miles an hour, the deceased was sitting with his arms on the brake; "over it." "As the train passed the waterworks, he got up to set the brake, and, if he had looked, he could have seen whether the brake was in proper order or not. He had time enough; it was light enough; there would have been no difficulty." The irresistible conclusion is that he took the chances of using the brake wheel, with no nut on the standard to hold it down, and a sudden check of speed threw him forward and off, with the brake wheel in his hands; so that his own neglect to inspect the brake, as the rule and his duty required him to do, or his willingness to encounter a danger known to him by using a brake, knowing that the nut was off, contributed directly and immediately to the deplorable accident which caused his death. The facts of this case make it plainly distinguishable from the case of *Railroad Co.* v. *Smith*, 90 Ga. 558 (16 S. E. Rep. 950).

But it is said that this is a question of fact, directly and distinctly submitted to the jury; that they, the proper judges of fact, found otherwise; and that the court should not interfere with the verdict of the jury on a question of fact, "unless there is a plain departure from right and justice;" and the rule has been long and well settled by repeated decisions that the question of negligence is in general one peculiarly for the determination of the jury, from all the facts and circumstances; and that it is only where the jury have plainly decided against the evidence, or with-

out evidence, and not merely because the judge presiding would have found a different verdict, that it will be set aside. But it as much the province of the court to decide the question whether or not the verdict is wholly without evidence on some essential point, or whether the evidence is plainly insufficient to warrant the finding of the jury, as it is the province of the jury to find such verdict; and if he finds it so, as it some times is, without the slightest ground for impugnment of either the jury's integrity or intelligence, it is the plain duty of the court, as the proper one to expound and apply the rules of law, to set such verdict aside and award a new trial. In this case such power was properly exercised, and the judgment complained of is affirmed.

Opinion of JUDGE PAUL :

The opinion of Judge PAUL, above alluded to, is 'as follows : "The facts prove before the jury were, substantially, that prior to May 4, 1891—the date of the accident—Lucian Beall had been in the defendant's employ as brakeman for about one year; that during that time he was informed that a rule of the defendant required that its brakemen should examine and know for themselves that the brakes which they were to use were in proper condition, and, if not, put them so, or report them to the proper parties, and have them put in order before using; that about forty minutes past six o'clock on the evening of May 4, 1891, Beall, a conductor, and two other brakemen were engaged in bringing a train, consisting of four gondola cars and an engine, from the Top mill, in this city, to defendant's freight depot; that the engine pulled the train to Fifth street, or near there, when it was reversed on the turntable, and from there was pushing the train towards the depot; that Beall was stationed on the front car, and had applied the brakes on that car once or twice during the trip; that when the train reached the city water works, he attempted to set the brakes, for the purpose of checking its speed, but, brake wheel becoming detached from the brake rod, he was thrown in front of the moving train, and killed ; that, upon examining the brake after the accident, it was discovered that the nut which fastened the wheel to the brake

rod was missing; that that part of the brake rod upon which the wheel rested, and where the nut was screwed on, was rusted, and indicated that it had been off for two or three days, or longer; that the brake rod, where it fitted into the wheel, was too small for the hole in the wheel; and that, instead of being square at that point, it was somewhat rounded by use.

It will be assumed, for the purposes of this decision, that the defendant negligently and wrongfully permitted this brake to become defective and out of repair; so that the only questions to be decided are (1) whether Lucian Beall, under the facts above set forth, was guilty of contributory negligence; and, if so, (2) whether that negligence was of such a character as to deprive his personal representative of the right to recover in this action. In *Railroad Co.* v. *Bragonier*, 119 Ill. 51 (7 N. E. Rep. 688) the court, on page 60, 119 Ill., and page 601, 7 N. E. Rep., says: 'It is as much the duty of a brakeman to observe that the brakes which he is expected to handle are in working order as it is that of the engine driver to see that his engine is in order for use. All employes in these respects must be held to a high degree of care, to insure any safety at all in railroad service.'

"In *Railroad Co.* v. *Jewell*, 46 Ill. 99, the second headnote is as follows: 'Where a brakeman was thrown from a car, and killed, it being alleged that the accident was caused by a defect in the brake, the nut which kept the wheel in its place on the upright shaft having become loose, and, in the effort to work the brake, the wheel came off, and the deceased was thrown to the ground, held, it was the duty of the brakeman to see that the brake was in a fit condition for use, and the company was not to suffer for his neglect.'

"In 14 Amer. & Eng. Enc. Law, 863, it is said: 'Where the printed rules of a railroad company required each conductor, before moving a train, to inform himself of the condition of the cars composing it, and the conductor failed to do so, and was injured by reason of defective brakes, it was held that he could not recover;' citing *Alexander* v. *Railroad Co.*, 83 Ky. 590.

"In *Railroad Co.* v. *Eddy*, 72 Ill. 138, it was held: 'It is the

duty of the servant of a railroad company to see that the machinery which he uses is in repair, and, when it is not, to report the fact to the company, and it is negligence on his part to fail to do so; and the company will not be liable for any injury sustained by him, occasioned by such machinery being out of repair.'

"In *Railroad Co.* v. *Herbert*, 116 U: S. 642 (6 Sup. Ct. 590) the court says : 'Of course, he (the brakeman) was bound to exercise care to avoid injury to himself. If he had known, or might have known by ordinary attention, the condition of the brakes and cars when he mounted the cars, and thus exposed himself to danger; in other words, if he did not use his senses as men generally use theirs to keep from harm—he can not complain of the injury which he has suffered.' See, also, to same effect, *Smith* v. *Car Works*, 60 Mich. 502 (27 N. W. Rep. 662).

"In *Darracott* v. *Railroad Co.*, 83 Va. 288 (2 S. E. Rep. 511) Judge LEWIS, after enumerating the duties of a railroad company to its employes, on page 294, 82 Va., and page 514, 2 S. E. Rep. says : 'There are also certain correlative duties on the part of the employe to the company. Of these, one is the duty of the employe to be reasonably observant of the machinery he operates, and to report any defects he may discover therein to the company. Another is to exercise ordinary care to avoid injuries to himself; for the company is under no greater obligation to care for his safety than he himself is. He must also obey the rules of the company prescribed for his safety, and which are brought to his knowledge ; and he must inform himself, as far as he reasonably can, respecting the dangers as well as the duties, incident to the service upon which he enters. It has accordingly been held in numerous cases, and the principle is elementary, that where the employe's willful disobedience of the company's rules is the proximate cause of the injury complained of, no recovery can be had of the company. And, in general, any negligence of the employe, amounting to the want of ordinary care, which is the proximate cause of the injury, will defeat an action against the company' citing numerous authorities.

"In *Hoffman* v. *Dickinson*, 31 W. Va. 143 (6 S. E. Rep. 53)

and *Humphreys* v. *Newport News & M. V. R'd Co.* 33 W. Va. 135 (10 S. E. Rep. 39) it was held: 'A servant can not recover for an injury suffered in the course of his employment, from a defect in the machinery or appliances used by the master, unless the master knew, or ought to have known, of the defect, and the servant was ignorant of such defect, or had not equal means of knowledge.' It will also be observed that the rule as announced in *Cooper* v. *Railroad Co.*, 24 W. Va. 37, and *Riley* v. *Railroad Co.*, 27 W. Va. 145, which holds a railroad company liable for injuries sustained by its employes, while in discharge of their duties, from the use of defective machinery and appliances, where such injuries resulted from a failure on the part of the company either to furnish safe machinery and appliances in the first place, or to keep them in good order and repair after having been so furnished, by having them continuously inspected by a person competent to perform that duty, is conditional, not absolute; the condition being that employes are at the time exercising ordinary care and caution to avoid the injury, and are discharging their own duties in a careful and prudent manner (4 Amer. & Eng. Enc. Law, 66); in other words, that they themselves are without fault.

"In *Carrico* v. *Railway Co.*, decided by the Supreme Court of Appeals of this state, Nov. 28, 1891 (14 S. E. Rep. 12) it was held: 'The general rule in regard to contributory negligence is that, if the negligence be mutual on the part of the plaintiff and defendant, there can not be a recovery. But if the injury would have happened just the same, although the plaintiff had been in no wise negligent, his negligence will not prevent his recovery; or if the defendant, after he has discovered the dangerous exposure, refuses or neglects to practice any care or caution to prevent the injury, he will be held liable.'

"The principles announced in the foregoing decisions, it seems to me, when applied to the facts in this case, show conclusively, not only that Lucian Beall was guilty of contributory negligence, but that that negligence was of such a character as to preclude any recovery on the part of his personal representative. The verdict of the jury must

therefore be set aside, and a new trial awarded the defendant."