# CHARLESTON

## MILLER SUPPLY CO. *v.* CRANE.

Submitted March 5, 1907.    Decided April 17, 1907.

APPEAL—*Review—Grant of New Trial—Conflicting Evidence.*

    The principles of *Coalmer* v. *Barrett*, 56 S. E. 585, approved and applied in a case where it was error for the circuit court to set aside the verdict of a jury in favor of the plaintiff and grant the defendant a new trial. (p. 659.)

Error to Circuit Court, Cabell County.

Action by the Miller Supply Company against C. H. Crane. Judgment for defendant, and plaintiff brings error.

*Reversed.*

WALLACE & FITZPATRICK, for plaintiff in error.

CAMPBELL, HEFFLEY & DAVIS, for defendant in error.

MILLER, JUDGE:

This case is ruled by the principles of *Coalmer* v. *Barrett*,

56 S. E. 585.   That case and this originated in a justice's
court.   In this case the plaintiff had judgment before the
justice for $158.50, the price of a wind-mill sued for.  Upon
appeal to and trial *de novo* in the circuit court, the jury re-
turned a verdict for the plaintiff for the same amount, which
the circuit court vacated on motion of the defendant.    The
rule governing this Court on motions to set aside verdicts,
founded on the construction of section 9, chapter 13, Code,
as amended by the acts of 1901, and former decisions, is
stated to be that this Court must consider all the evidence
upon the trial, not rejecting any oral evidence of the ex-
ceptor in conflict with that of his adversary.   This rule was,
in *Laidley* v. *County Court*, 44 W. Va. 566, extended by im-
plication to the circuit court.   To justify setting aside the
verdict, says that case, the court must find it plainly against
the decided weight and preponderance of the evidence—de-
cided in the sense of pronounced. The verdict must be palpa-
bly unjust, and call loudly and plainly for relief.    Judge
Cox says in *Coalmer* v. *Barrett, supra:*    "In a case in-
volving conflicting oral evidence, to justify a disturbance of
the verdict on the ground alone that it is plainly against the
decided weight and preponderance of the evidence, there must
be documentary evidence, uncontroverted evidence, facts and
circumstances, or some of these, which, when considered with
the conflicting oral evidence, plainly constitute a decided
weight and preponderance of evidence against the verdict.
Without such documentary evidence  *    *    *   the court is
powerless to set aside the verdict on the ground alone that it
is plainly against the decided weight and preponderance of
conflicting evidence, because to do so would invade the prov-
ince of the jury in determining the credibility of the wit-
nesses who gave conflicting evidence in the presence of the
jury."

When, however, we are called upon, as in this case, to re-
view a judgment setting aside a verdict, we are confronted
with another rule restated by Judge Cox, viz: that such ac-
tion of the trial court is entitled to peculiar respect, and
will not be reversed unless plainly erroneous; in other words
we must be satisfied from all the evidence that the court be-
low plainly erred.   In *Ruffner* v. *Hill*, 31 W. Va. 431, it
is said by Judge Snyder that "the discretion exercised

in granting a new trial ought not to be disturbed unless a flagrant case of injustice is made. The effect of this rule is not to stifle investigation, but to allow another inquiry into the facts and further hearing upon the matters."

We must dispose of the present case, therefore, according to these rules. In doing so, however, we are not precluded from placing ourselves so far as possible in the place of the circuit judge, or from looking at the case as he was bound to view it by the rules which govern him as well as us. We are to give due consideration to the fact, of course, that he had opportunity to see and hear the witnesses who gave conflicting oral evidence; but these rules do not apply to oral evidence not conflicting, nor to documentary evidence. It would be wrong for the circuit court, as for this Court, to disturb a verdict involving conflicting oral evidence not plainly against the weight and preponderance of the evidence; for, as said by JUDGE SNYDER in *State* v. *Cooper*, 26 W. Va. 340, a new trial "ought to be granted only in case of plain deviation from right and justice, not in a doubtful case merely because the Court if it had been on the jury would have given a different verdict." The defendant has had two trials, both resulting in the same verdict. Before the end comes, each of the parties will likely have spent in costs more than the amount originally involved.

Counsel for the defendant correctly say there were two clear cut defenses interposed: the one that Stewart, the architect, was not authorized as agent to buy the mill from the plaintiff; the other, that, even if he had been, the mill was not fit for the purposes for which it was sold. Now what facts does the evidence establish in regard to these two defenses? and it should be kept in mind that they are defenses.

First, as to the question of agency. The defendant Crane, or he and his associates in a timber company, employed Stewart, an architect, to make plans for and superintend the construction of a dwelling house for Crane on land of the timber company. Stewart was not a contractor and builder, and, as he says, never contracted to furnish anything, his only business being to build houses on paper. After the house was about completed Crane called on

Stewart, and said he wanted a wind-mill quickly.    Stewart suggested one could be procured through the Miller Supply Company.    Crane could not go, so sent Stewart, who called on the plaintiff, selected from a catalogue the type of mill, and by its number the supply company the same day (by letter addressed to the manufacturers at Columbus, Ohio) ordered the mill shipped directly to Crane, and added:    "Our customer urges quick shipment."    Crane admits the mill was ordered for him and not for his timber company.    After the mill arrived, as it did in a few days in a knocked-down condition, the architect, who was notified, had it delivered on the ground.    Crane then saw Stewart about having it erected. Stewart suggested E. O. Smith to do the work.    Crane afterwards met Smith on a bridge and said to him, "We have a wind-mill that we want erected," and told him that Stewart had the contract and to go and see him.    Stewart says (and no one contradicts him) that Smith afterwards came to his office, sent as he supposed by Crane, and he arranged with him to set up the machine, saying to him he was acting as agent for Crane, who would pay him.    After he had seen Stewart Smith met Crane again on the bridge and told him he had the contract.    Smith had had some little experience in work of that kind; he could not find a place for all the parts, but succeeded in a few days in raising the frame, and after completing the work Stewart gave him an order on Crane & Company as follows:    "E. O. Smith has completed the wind-mill at your building above Guyandotte, and is entitled to his pay.    Erection of a mill furnished as per agreement, $58.45.    Respectfully, J. B. Stewart."    Smith presented this order to Crane, who declined to pay, giving as his only excuse that Stewart had not finished his contract on the chimney (the wind-mill had no chimney), evidently referring to Stewart's contract of superintendency of construction of the building.    Another architect was present in Stewart's office, and corroborates Stewart in what took place between him and Crane in regard to ordering the mill.    There are other corroborating facts and circumstances showing the agency of Stewart which need not be referred to.

On the other point of defense, the suitability of the mill, the evidence of the manufacturers is that the frame was well

built of the best material and on the best scientific principles, and so as to combine the essential elements of minimum of weight with maximum strength, necessary in machines of that character, and out of angle steel, posts and girths, known as "medium carbon structural," which is considered the best for the purpose, as confirmed after years of experience and after making exhaustive tests and experiments; that the frame of the mill was designed to carry a twelve-foot back geared mill of their make, which is one size larger than was shipped with the order. The uncontradicted evidence of Smith, who erected this mill on the ground, is that he had an accident while in the act of raising the frame that caused it to fall some ten or fifteen feet, resulting in breaking or twisting one of the legs. It also appears from his testimony and the testimony of other witnesses that several of the parts he could not find place for, and that, after he finally got it up and in a few days, it careened over; Smith says, "they told me there was a wind storm." Expert mechanical engineers were examined on both sides, who show that the mill was properly and suitably built. One, a witness for Crane, said after examining the mill: "I figured it up, and if it had been black iron it seems there was sufficient amount of material to hold up the weight," but added, "as it was galvanized iron it is a very hard matter to tell the chemical condition of it." Being referred to the fall of the frame in its erection by Smith, he gave it as his opinion that such a fall would likely bend or break it and put it out of shape, and that pulling it down would decrease its strength. He says that medium carbon structural is a high grade of material, and is used in building bridges which call for the best with rigid inspection. This and much other corroborating evidence greatly preponderates in favor of the suitability of the mill for the purposes for which it was sold. The parties are unalterably anchored to these facts, which no new evidence could change. After the erection of the mill and it was put in operation, it developed weakness in the legs of the frame at the places where the evidence showed it had been injured in the fall. Like a chain, such a structure is no stronger than its weakest link; and we are more than convinced that the cause of all the trouble attending the erection and falling of the machine was

due to the inexperience and careless handling of it over which the plaintiff had no control. We are further more satisfied that a new trial would not enure to the benefit of the defendant; that no new evidence could be produced to change or contradict the facts presented to the jury; and that a verdict in his favor on another trial, on the evidence in this record, would necessarily have to be set aside. No jury would deprive the plaintiff of its rights upon the facts shown on trial of this case.

But the defendant claims that the court below erred in giving to the jury two instructions propounded by the plaintiff. The motion for a new trial was not based on any supposed misdirection of the jury on the law, but solely on the ground that the verdict was contrary to the law and evidence. The criticism of these instructions is that they ignore the second defense of the defendant. The first instruction we think correctly states the law of undisclosed principal, in accordance with the theory of the plaintiff of the facts proven; and it does not ignore the second defense, for it is modified by the words "in accordance with the contract." The grammar of the second instruction is not good, but properly paraphased, it also modifies the proposition by the words "in accordance with the contract of purchase made by his agent." Both of these terms cover the implied agreement that the machine sold was to be fit for the purposes for which it was sold, and cover the second ground of defense. The instructions are not inconsistent with each other. We do not understand, however, that one party to a cause is required to cover by his instructions the theories of the other. Each party is at liberty to formulate his instructions on his own theories of the case. The defendant asked no instructions, as he might have done, and certainly can not complain that the plaintiff's instructions did not cover his theories and defense of the case. We see nothing prejudicial to the defendant in these instructions.

We therefore reverse the judgment of the circuit court; and proceeding to give such judgment on the verdict of the jury as the circuit court should have given, it is considered by the Court that the plaintiff, The Miller Supply Company, a corporation, do recover of the defendant, C. H. Crane, one

hundred and fifty-eight dollars and fifty cents, according to the verdict of the jury, with interest thereon from August 5, 1905, and its costs in this Court and in the circuit court expended.

*Reversed.*